John Chucklin, Appellee, v. Frank O. Lowden et al., Trustees of Estate of Chicago, Rock Island and Pacific Railway Company, Appellants.

### Gen. No.` 9,616.

Opinion filed February 14, 1941. Rehearing denied April 2, 1941.

STAFFORD & SCHOEDE and EDWARD C. SCHOEDE, all of Rock Island, for appellants; DANIEL TAYLOR and MILTON V. THOMPSON, both of Chicago, of counsel.

MORRIS D. COPPERSMITH and HUBER & RIEDY, all of Rock Island, for appellee; ISADOR I. KATZ, of Rock Island, and MORRIS D. COPPERSMITH and ALBERT HUBER, of counsel.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This is an action by appellee to recover for injuries received in a collision between an automobile then being driven by him and one of appellant's trains. Trial resulted in a verdict for appellee in the sum of $7,500.

Appellants bring this appeal on judgment rendered thereon.

The accident occurred in the city of Moline, where 15th street crosses appellant's tracks. The street runs north and south, and appellee was traveling south. The tracks run east and west, and the train was traveling east. The accident happened a few minutes before 6:15 in the morning. The train involved is known as the Golden State Limited, and on the morning in question was composed of 15 coaches. It pulled out of the station in Rock Island at about 6:08 a.m. After leaving the station, it proceeded east and as it approached the 15th street crossing, according to the testimony of the conductor, engineer, and fireman, had reached a speed of from 20 to 25 miles per hour.

The appellee charged that appellants, through their servants who were in charge of the train, operated the same so carelessly and negligently as to wrongfully cause his damages. He further charged appellants with failing to keep a proper lookout on the engine; failing to keep the train under proper control; failing to provide a flagman at the 15th street crossing; failing to maintain a safety gate, and failing to maintain proper mechanical signal device at such crossing.

Appellants alleged that appellee was not in the exercise of due care and caution for his own safety at the time in question, that his injuries were the result of his own negligence, and deny all forms of negligence charged. Many other matters were set up by answer to the averments contained in the several counts of the complaint but we do not deem it necessary to make reference to same here.

Appellants maintained a crossing watchman at this street crossing each day from 6:30 a.m. until 12:00 o'clock midnight. The crossing is located in the factory district. Appellants claim that very little traffic crosses here between midnight and 6:30 in the morning.

Appellee by occupation is a window washer. It appears that it is his custom to start out of a morning at about three o'clock, and that he did so on the morning in question. He passed over this crossing to the north and to an office building where he was engaged in his work until shortly before the accident. He had thus been employed at this building for 3 years. Upon leaving this building he started driving south on 15th street toward the crossing in question. He states that he looked to the left and to the right; that he saw nothing coming; that he saw no watchman; that he thought if a watchman was there, he would stop but since none was there, that he kept going; that he did not hear any whistle or other warning and was not aware of the approach of the train.

It appears from appellee's testimony that it had been his custom to pass over this crossing in his work from four to six times per day since 1927. He states that at the time of the accident, he had his car in second gear and was going about 10 miles per hour. He had almost cleared the crossing when the accident occurred. The side of the engine struck the rear portion of his automobile, injuring appellee and damaging his car. He states the weather condition was bad for visibility at the time. It further appears that it was his custom to go to the same building to start work each morning, at about three o'clock. This necessitated his crossing the tracks going north. Upon his completion of the work at the building, it was his custom to then drive south across the tracks as he was doing upon the morning in question. He states he did not see any watchman at the crossing at 3 a.m., but that he did not know a watchman was not there. He says he had seen a watchman at other times during the daytime. There are a series of tracks at the place in question, some belonging to appellant and some to the Burlington. He states that he looked toward the depot, the direction from which the train was approaching; that he saw no train; that he heard no whistle and heard no bell; that

his hearing and sight were good; that it was a cold, frosty morning; that the windows of his car were closed and that they were frosty, being clouded over with vapor. He states that he could see through the windshield but that he could not see through the side windows.

One witness for appellee states that he saw the train coming and heard the whistle; that he did not see the accident but that he heard the crash when it occurred. He estimates the speed of the train to have been between 40 and 45 miles per hour.

Another witness for appellee states that he saw the train approaching the crossing in question, and that in his opinion it was running from 50 to 55 miles per hour. He also states that he saw an automobile approaching the track on which the train was traveling, and that the automobile was moving at about 10 miles an hour; that when he crossed the street, he heard a "bang" and turned around and saw that the car had been hit. He does not recall hearing any whistle or bell being sounded.

A witness for appellants, who was employed in the vicinity, was walking on 15th street at the time of the accident. He states he heard the train coming and heard the whistle; that he saw the automobile coming from the north; that he heard the train whistling and coming closer; that he continued on north and the automobile continued coming south; that it was proceeding slowly; that the train kept coming and the automobile kept coming; that the man driving the automobile was looking straight ahead, and that as his automobile came upon the track in question, the train hit it. He says he heard the train whistle several times; that it was a long heavy train; that the accident happened about 12 minutes after six; that he went to the scene of the accident and from there to his work.

Another witness for appellants was on his way to work at the time in question. He states he· saw the train before it reached 11th street; that it blew the

whistle all the way from 11th street to 15th street where the accident occurred, and that the bell was ringing. He says he saw the automobile approaching the crossing; and that he was near the shanty which was used by the watchman at the crossing when on duty. He states that the man driving the automobile was looking straight ahead and he did not see him look in any other direction; that the engine struck the rear of the automobile near the right-rear wheel; that the impact caused the automobile to come over toward where this witness was standing and that he ran out of the way; that he does not think it turned the automobile over but that it turned it around and the driver fell out of the door on his left side. He states that the whistle was blowing and the bell was ringing, and that the train was making the usual noise. He saw no other automobiles approaching the crossing at that time.

Appellant's trainmaster was riding in the engine cab that morning and states that the engineer was in his accustomed position on the right side of the cab, and that the fireman was riding upon the left side. The trainmaster says that he was standing by the engineer; that he was blowing the whistle; that the bell was rung by an automatic devise which was then in operation and the bell was being thus rung automatically; that the train was traveling at a speed of from 20 to 25 miles per hour; that as the 15th street crossing was being approached and while he was blowing the whistle, the fireman yelled, "spike her." This occurred at the west edge of the 15th street crossing and at a time when this witness says he was pulling the whistle cord. The train was brought to a stop shortly after the collision. The meaning of the expression used by the fireman was to set the air in order to bring the train to a stop. He states that when the fireman gave the alarm and the air was set, that he and the engineer both looked out of the right side of the cab; that they could not see the automobile until they struck it on account of the size of the engine, and the fact that

the automobile had to cross the track far enough to become visible; that as soon as the accident occurred, he looked at his watch and it was 6:13 a. m.

Another workman who testified for appellants and who was on his way to work that morning states that he saw the accident. He says the weather was very cold but that visibility was good; that he heard the train coming and heard the whistle and hurried toward the track in order to get across ahead of the train; that as the engine approached the crossing in question, he saw an automobile coming from the north; that the whistle was blowing; that the automobile was traveling slowly; that the right-hand side of the engine struck the right-rear side of the car; and that the automobile almost "got across ahead of the train."

Another witness employed as a crossing policeman by the city of Moline states that he was in his car that morning, and that as he drove across the 14th street crossing, going north, he heard the whistle of a train approaching from the west; that the whistle was being blown repeatedly; that he drove east to 15th street and that as he turned on 15th street, the accident occurred.

Appellee's charges of negligence against appellants which were directed toward the operation of the train were questions of fact. The maintaining of automatic signal devices at such crossings is under the jurisdiction of the Commerce Commission of the State. We do not find where it is charged that such commission had ordered automatic signal device installed at this crossing, or that any of the regulations or orders of the said commission were then being violated. The question here is whether there was any negligence charged and proven on the part of appellants that was the proximate cause of plaintiff's injuries.

Appellee states that he did not see the train approaching. This is quite evident. Those witnesses who observed his car crossing the tracks and saw the train coming, state that he was driving it slowly and that he did not alter the speed. All the facts and cir-

cumstances in evidence as well as the testimony of the witnesses who saw the accident, establish the fact that appellee did not see the train. Considering the manner in which his car was struck, it would appear that he had either cleared the south rail or practically so at the time of the collision. It is common knowledge that a large railroad engine used to pull heavy trains as in this case, extends out beyond the rails on either side for a considerable distance. From the evidence, it appears that the side of the engine struck the rear portion of appellee's car, causing it to skid and turn about in the street but not overturning it. This would indicate that he needed but a few more inches to have avoided the collision.

We are of the opinion that the evidence in this case does not support the verdict. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*